UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------X
KAISHA MURPHY *and* SHANA-KAY MCDOUGALL,
*on behalf of themselves and those similarly situated,*

                                    *Plaintiffs*,

            *v.*

HEARTSHARE HUMAN SERVICES OF NEW YORK *and*
HEARTSHARE EDUCATION CENTER,

                                    *Defendants*.
----------------------------------------------------------------------------X

17 CV 1033

**COMPLAINT**

Plaintiffs Kaisha Murphy and Shana-Kay McDougall, on behalf of themselves and those similarly situated, by their counsel, The Harman Firm, LLP, allege for their complaint against Defendants HeartShare Human Services of New York and HeartShare Education Center as follows:

**NATURE OF THE ACTION**

1. Plaintiffs Kaisha Murphy and Shana-Kay McDougall (collectively, "Plaintiffs") were employed by Defendant HeartShare Human Services of New York ("HeartShare Human Services") and Defendant HeartShare Education Center ("HeartShare Education") (collectively, "Defendants" or "HeartShare").

2. HeartShare Education is a subsidiary controlled by HeartShare Human Services; the two are so closely related as to be functionally the same entity.

3. Plaintiffs received two separate paychecks each pay period, one from HeartShare Human Services and one from HeartShare Education.

4. Between the two entities, Plaintiffs regularly worked in excess of 40 hours in a work week, occasionally working as much as 60 hours in a work week.

1

5. Plaintiffs were never paid at the overtime premium rate for hours worked in excess of 40 in a work week.

6. Plaintiffs seek damages and costs against Defendants for failing to pay them at the overtime premium rate for hours worked in excess of 40 in a work week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York State Labor Law ("NYLL"), N.Y. Lab. Law. § 1 *et seq*.

7. Plaintiffs also seek damages and costs against Defendants for breach of contract in violation of the New York State common law, as Defendants failed to pay Plaintiffs at the overtime premium rate for hours worked in excess of 40 in a work week despite agreeing to pay Plaintiffs overtime and distributing a Notice of Wage Rate to Plaintiffs stating that Plaintiffs were eligible for overtime pay.

8. Plaintiffs bring FLSA claims on behalf of themselves and all other similarly situated employees under FLSA § 216(b).

9. Plaintiffs bring NYLL claims on behalf of themselves and all other similarly situated employees pursuant to Rule 23 of the Federal Rules of Civil Procedure.

10. Plaintiffs bring breach of contract claims on behalf of themselves and all other similarly situated employees pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

11. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiffs' claims arising under the FLSA.

12. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiffs' claims arising under the NYLL and the New York State common law, as those claims

are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

13. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

**PARTIES**

14. At all times relevant hereto, Plaintiff Murphy was and is a resident of Kings County in the State of New York.

15. At all times relevant hereto, Plaintiff McDougall was and is a resident of Kings County in the State of New York.

16. Upon information and belief, at all times relevant hereto, Defendant HeartShare Human Services was and is a not-for-profit corporation organized under the laws of the State of New York with offices located at 12 Metrotech Center, Brooklyn, New York 11201.

17. Upon information and belief, at all times relevant hereto, Defendant HeartShare Education was and is a nonprofit subsidiary of Defendant HeartShare Human Services, with offices located at 12 Metrotech Center, Brooklyn, New York, 11201.

18. Upon information and belief, Defendants operate The HeartShare School, located at 1825 Bath Avenue, Brooklyn, New York, 11214 (the "School").

19. Upon information and belief, Defendants operate a residence for students, located at 1825 Bath Avenue, Brooklyn, New York, 11214 (the "Residence").

**COVERAGE UNDER FLSA**

20. At all times relevant hereto, Plaintiffs were Defendants' "employees" within the meaning of the FLSA.

21. At all times relevant hereto, Defendants were Plaintiffs' "employers" within the meaning of the FLSA.

22. Defendants were, and continue to be, "employers" within the meaning of the FLSA.

23. At all times relevant hereto, Defendants were, and continue to be, an "enterprise engaged in commerce" within the meaning of the FLSA, as they generate revenue by providing services at the School and the Residence.

24. Upon information and belief, Defendants' annual gross revenue was in excess of $500,000 during the relevant time period.

25. At all times relevant hereto, Plaintiffs were "engaged in commerce" and subject to individual coverage of the FLSA.

26. Upon information and belief, Defendant HeartShare Education is a wholly owned subsidiary of Defendant HeartShare Human Services.

## COLLECTIVE ACTION ALLEGATIONS

27. Pursuant to 29 U.S.C. § 207, Plaintiff Murphy seeks to prosecute her FLSA claims as collective actions on behalf of herself and others who currently work or formerly worked as Assistant Teachers for the School and who performed work as Direct Support Professionals for HeartShare Human Services (the "Collective Action Members") at any time during the three-year period immediately preceding the filing of the original complaint (the "Statutory Period").

28. Pursuant to 29 U.S.C. § 207, Plaintiff McDougall seeks to prosecute her FLSA claims as collective actions on behalf of herself and others who currently work or formerly worked as Paraprofessionals for the School and who performed work as Direct Support

Professionals for HeartShare Human Services (the "Collective Action Members") at any time during the three-year period immediately preceding the filing of the original complaint (the "Statutory Period").

29. Plaintiffs regularly worked for Defendants in excess of 40 hours per week, but did not receive overtime pay based on their combined hours worked for both Defendants.

30. Defendants subjected Plaintiffs and Collective Action Members to the same pay provision(s) in that neither Plaintiffs nor Collective Action Members had their hours properly aggregated by Defendants.

31. The Collective Action Members are thus owed unpaid overtime wages under the FLSA for the same reasons as Plaintiffs.

32. Questions of law and fact common to Collective Action Members predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all Collective Action Members. Among the questions of law and fact common to Plaintiffs and other Collective Action Members are:

> i. whether Defendants employed Collective Action Members within the meaning of the FLSA;
>
> ii. what proof of hours worked is sufficient where the employer fails in its duty to maintain accurate time records;
>
> iii. whether Plaintiffs are exempt from overtime requirements under the FLSA;
>
> iv. whether Defendants failed to pay Collective Action Members overtime compensation for hours worked in excess of 40 hours in a work week, in violation of the FLSA;

v. whether Defendants are properly categorized as joint employers under the FLSA;

vi. whether Defendants' violations of the FLSA were willful as that term is used within the context of the FLSA;

vii. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees.

**CLASS ACTION ALLEGATIONS**

33. Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiff Murphy seeks to prosecute her NYLL and breach of contract claims as class actions on behalf of herself and others who currently work or formerly worked as Assistant Teachers for the School and who performed work as Direct Support Professionals for HeartShare Human Services (the "Class Members") at any time during the six-year period immediately preceding the filing of the original complaint (the "Statutory Period").

34. Pursuant to Rule 23, Plaintiff McDougall seeks to prosecute her NYLL and breach of contract claims as collective actions on behalf of herself and others who currently work or formerly worked as Paraprofessionals for the School and who performed work as Direct Support Professionals for HeartShare Human Services (the "Class Members") at any time during the six-year period immediately preceding the filing of the original complaint (the "Statutory Period").

35. While the exact number of Class Members is presently unknown, it is estimated that there are at least 50 Class Members.

36. The group of potential Class Members is so numerous as to make it impracticable to bring them all before the Court, for which reason Plaintiffs initiate this litigation for all persons similarly situated pursuant to Rule 23.

37. Despite the numerical size of the Class, the identities of Class Members can be ascertained through Defendants' payroll records.

38. Plaintiffs and their counsel do not anticipate any difficulties in the management of this action as a class action.

39. Plaintiffs are committed to vigorous prosecution of this action, will adequately represent the purported Class Members in this action, and have retained competent counsel experienced in class action litigation.

40. Plaintiffs are Class Members and have no interest antagonistic to or in conflict with other Class Members.

41. This action raises numerous questions of law and fact which are of common and general interest to the Class Members, including:

   i. whether Defendants employed Class Members within the meaning of the NYLL;

   ii. what proof of hours worked is sufficient where the employer fails in its duty to maintain adequate time records;

   iii. whether Defendants failed to pay Class Members overtime compensation for hours worked in excess of 40 hours per workweek, in violation of the NYLL;

   iv. whether Defendants are joint employers under the NYLL;

v. whether Defendants' violations of the NYLL are willful as that term is used within the context of the NYLL;

vi. whether Defendants agreed to pay Plaintiffs at the overtime premium rate; and

vii. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees.

42. The claims or defenses of the represented parties are typical of the claims or defenses of the Class Members.

43. Plaintiffs have the same interests as other Class Members in prosecuting the claims against Defendants.

44. Plaintiffs and all Class Members sustained damages as a result of Defendants' wrongful conduct.

45. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

46. Furthermore, due to the expense and burden of individual litigation, it would be extraordinarily difficult for Class Members to redress the wrongs done to them individually.

47. Plaintiffs and The Harman Firm, LLP, will fairly and adequately assert and protect the interests of the Class Members.

## STATEMENT OF FACTS

48. Plaintiffs are education and childcare professionals who worked for HeartShare at the School and the Residence.

49. The School serves children with various developmental and learning disabilities.

50. Many of the children attending the School live at the Residence, which is immediately adjacent to the School.

**I. Plaintiff Murphy**

51. Ms. Murphy worked for HeartShare Education as an Assistant Teacher at the School from 2011 through March 2016.

52. Ms. Murphy also worked for HeartShare Human Services as a Direct Support Professional ("DSP") in the Residence.

53. The School offers full time classes to minor students with autism and other special needs.

54. The Residence houses students at the School who require full-time care because of their disabilities.

55. The same supervisor, Carol Verdi, oversees both the School and the Residence.

56. As an Assistant Teacher, Ms. Murphy worked approximately 35 hours per week at the school, approximately 8:00 a.m. to 2:30 p.m., Monday through Friday.

57. Ms. Murphy's responsibilities at the School included assisting students with their assignments, maintaining order in the classroom, and assisting students at meals and with using the restroom.

58. Some of Ms. Murphy's duties involved assisting the students with lessons; others were entirely non-academic.

59. After completing her shift at the School, Ms Murphy accompanied her students back to the Residence.

60. Ms. Murphy would then sign out and wait at the Residence with the students for HeartShare's DSP to arrive and take custody of the Students; Ms. Murphy would wait at the

Residence for up to an hour for the DSP to arrive.

61. Ms. Murphy began formally working at the Residence as a DSP in and around November 2013.

62. From November 2013 through March 2016, Ms. Murphy worked approximately 25 hours per week in the Residence as a DSP in addition to her work hours as an Assistant Teacher at the School.

63. The School distributed an annual "Notice and Acknowledgement of Wage Rate and Designated Payday Under Section 195.1 of the New York State Labor Law," which clearly states that Ms. Murphy was eligible for overtime pay.

64. In the event that Ms. Murphy worked more than 40 hours per week at either the School or the Residence *individually*, Defendants paid her at the overtime premium rate.

65. Ms. Murphy routinely worked in excess of 40 hours per week between the School and the Residence combined.

66. For example, Ms. Murphy received a paycheck from HeartShare Education for the pay period beginning April 27, 2015, and ending May 10, 2015, reflecting 66.25 hours of work and 8.75 hours of sick time. None of this time was compensated at the overtime rate.

67. Ms. Murphy received a paycheck from HeartShare Human Services for the pay period beginning April 27, 2015, and ending May 10, 2015, reflecting 24.5 hours worked. None of this time was compensated at the overtime rate.

68. As a result, Ms. Murphy worked 90.75 hours for HeartShare over this two-week pay period, but did not receive overtime pay for hours worked in excess of 40 per week.

69. Ms. Murphy's paystubs from the School and the Residence were issued from the same address: 12 MetroTech Center, Brooklyn, NY, 11201 (HeartShare's main office).

70. Ms. Murphy received a paycheck from HeartShare Education for the pay period beginning July 20, 2015, and ending August 2, 2015, reflecting 74.25 hours of work and 0.75 hours of sick time. None of this time was compensated at the overtime rate.

71. Ms. Murphy received a paycheck from HeartShare Human Services for the pay period beginning July 20, 2015, and ending August 2, 2015, reflecting 25 hours of work. None of this time was compensated at the overtime rate.

72. As a result, Ms. Murphy worked 99.75 hours for HeartShare over this two-week pay period, but did not receive overtime pay for hours worked in excess of 40 per week.

73. Ms. Murphy received a paycheck from HeartShare Education for the pay period beginning October 26, 2015, and ending November 8, 2015, reflecting 67.50 hours of work and 2.31 hours of sick time. None of this time was compensated at the overtime rate.

74. Ms. Murphy received a paycheck from HeartShare Human Services for the pay period beginning October 26, 2015, and ending November 8, 2015, reflecting 52.5 hours of work. None of this time was compensated at the overtime rate.

75. As a result, Ms. Murphy worked 120 hours for HeartShare over this two-week pay period, but did not receive overtime pay for hours worked in excess of 40 per week.

**II. Plaintiff McDougall**

76. Ms. McDougall worked for HeartShare Education as an Paraprofessional or "One-on-One" in the School from June 2015 through July 2016.

77. Ms. McDougall also worked for HeartShare Human Services as a DSP in the Residence.

78. As a DSP, Ms. McDougall arrived at the Residence at approximately 6:30 a.m. in order to help the resident students with their morning routines.

79. Ms. McDougall helped the resident students dress and prepare for the day and escorted them to the School.

80. As a Paraprofessional, Ms. McDougall worked approximately 35 hours per week at the school, approximately 8:00 a.m. to 2:30 p.m., Monday through Friday.

81. Ms. McDougal's responsibilities at the School included working with students to guide them through their exercises and lessons and assisting students at meals and with using the restroom.

82. Some of Ms. Murphy's duties involved assisting the students with lessons; others were entirely non-academic.

83. After completing her shift at the School, Ms McDougall accompanied her students back to the Residence.

84. Ms. McDougall would then sign out and wait at the Residence with the students for HeartShare's DSP to arrive and take custody of the students; Ms. McDougall would wait at the Residence for up to an hour for the DSP to arrive.

85. Ms. McDougall occasionally worked a second shift at the Residence as a DSP in the afternoon and evening.

86. The School distributed a "Notice and Acknowledgement of Wage Rate and Designated Payday Under Section 195.1 of the New York State Labor Law" to Ms. McDougall on May 28, 2015, which clearly states that Ms. McDougall was eligible for overtime pay.

87. In the event that Ms. Murphy worked more than 40 hours per week at either the school or the residence *individually*, Defendants paid her at the overtime premium rate.

88. Ms. Murphy routinely worked in excess of 40 hours per week between the School and the Residence combined.

89. Ms. McDougall received a paycheck from HeartShare Education for the pay period beginning February 1, 2016, and ending February 14, 2016, reflecting 60 hours of work. None of this time was compensated at the overtime rate.

90. Ms. McDougall received a paycheck from HeartShare Human Services for the pay period beginning February 1, 2016, and ending February 14, 2016, reflecting 33.5 hours of work. None of this time was compensated at the overtime rate.

91. As a result, Ms. McDougall worked 93.5 hours for HeartShare over this two-week pay period, but did not receive overtime pay for hours worked in excess of 40 per week.

92. Ms. McDougall's paystubs from the School and the Residence were issued from the same address: 12 MetroTech Center, Brooklyn, NY, 11201 (HeartShare's main office).

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Unpaid Overtime in Violation of the FLSA**

93. Plaintiffs, for themselves and on behalf of those similarly situated, hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 92 with the same force as though separately alleged herein.

94. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA.

95. The FLSA mandates that employers compensate employees at one-and-a-half times their normal hourly rate for all hours worked in excess of 40 each week.

96. Defendant HeartShare Education and Defendant HeartShare Human Services are so closely related that they are functionally the same entity.

97. Defendants improperly calculated Plaintiffs' hours worked at the School and the Residence separately.

98. As a result, Plaintiffs regularly worked in excess of 40 hours per week for Defendants, but were not paid at the overtime premium rate for those hours.

99. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their back pay at the overtime premium rate, liquidated damages, and reasonable attorneys' fees, costs, and interest related to the action.

## SECOND CAUSE OF ACTION
### Unpaid Overtime in Violation of the NYLL

100. Plaintiffs, for themselves and on behalf of those similarly situated, hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 99 with the same force as though separately alleged herein.

101. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL.

102. NYLL mandates that employers compensate employees at one-and-a-half times their normal hourly rate for all hours worked in excess of 40 each week.

103. Defendant HeartShare Education and Defendant HeartShare Human Services are so closely related that they are functionally the same entity.

104. Defendants improperly calculated Plaintiffs' hours worked at the School and the Residence separately.

105. As a result, Plaintiffs regularly worked in excess of 40 hours per week for Defendants, but were not paid overtime.

106. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants their back pay at the overtime premium rate, liquidated damages, and reasonable attorneys' fees, costs, and interest related to the action.

## THIRD CAUSE OF ACTION
### Breach of Contract

107. Plaintiffs, for themselves and on behalf of those similarly situated, hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 106 with the same force as though separately alleged herein.

108. Plaintiffs agreed to perform work and services for Defendants in exchange for an hourly wage.

109. As part of that agreement, Defendants agreed to pay Plaintiffs at an overtime premium rate for hours worked in excess of 40 per week.

110. Defendants improperly tallied Plaintiffs' hours separately; as a result, Defendants did not properly pay Plaintiffs for all overtime hours worked, in breach of their employment agreement with Plaintiffs.

111. As a direct and proximate consequence of Defendants' actions, Plaintiffs have been denied overtime wages.

112. Plaintiffs are entitled to compensatory damages, costs, fees, and any other damages and compensation the Court deems appropriate.

## REQUESTS FOR RELIEF

**WHEREFORE**, the individually named Plaintiffs respectfully request that this Court grant the following relief:

A. on Plaintiffs' first claim, damages to be determined at trial;

B. on Plaintiffs' second claim, damages to be determined at trial;

C. on Plaintiffs' third claim, damages to be determined at trial;

D. an award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

E. such other and further relief as this Court deems appropriate.

Dated: New York, New York
February 23, 2017

By: *[signature]*

Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, LLP
*Attorneys for Plaintiffs*
220 Fifth Avenue, Suite 900
New York, New York 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com