UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAISHA MURPHY and SHANA-KAY MCDOUGALL, on behalf of themselves and those similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　– against –<br><br>HEARTSHARE HUMAN SERVICES OF NEW YORK and HEARTSHARE EDUCATION CENTER,<br><br>　　　　　　　　Defendants. | **MEMORANDUM AND ORDER**<br><br>17-CV-1033 |

**PARTIES**

**Kaisha Murphy and Shana-Kay McDougall**

**HeartShare Human Services of New York**

**HeartShare Education Center**

**APPEARANCES**

Owen Huntting Laird
Walker G. Harman, Jr.
The Harman Firm P.C.
220 Fifth Avenue
Suite 900
New York, NY 10001

Aaron G. Gingrande
Ropes & Gray LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199

Jeffrey F Webb
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704

Lee S. Gayer
Ropes & Gray LLP
45 Rockefeller Plaza
New York, NY 10111

Dominic Sarna
Wingate Kearney & Cullen
45 Main Street

Suite 1020
Brooklyn, NY 11201

Richard John Cea
Wingate Kearney & Cullen
32 Court St
Brooklyn, NY 11201

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.  Introduction ......................................................................................................... 1

II.  Facts ................................................................................................................... 3

III.  Law ..................................................................................................................... 4

   A.  Legal Standard ............................................................................................... 4

   B.  Overtime under FLSA and NYLL ................................................................. 5

   C.  Joint Employment ........................................................................................... 5

      1.  Vertical Employment ............................................................................... 6

      2.  Horizontal Employment ........................................................................... 9

IV.  Application of Law to Facts ............................................................................. 11

   A.  Horizontal Employment ............................................................................... 11

      1.  29 C.F.R. § 791.2 ................................................................................... 14

      2.  Additional 29 C.F.R. § 791.2 Factors ................................................... 15

   B.  NYLL ............................................................................................................ 21

   C.  Breach of Contract Claim ............................................................................. 21

V.  Conclusion ........................................................................................................ 21

## I.  Introduction

Plaintiffs were employees of both a school and a residence for students with disabilities. They claim that the two employers are so closely related that they must be considered one for purposes of federal and state overtime law.  Alleged are violations under the Fair Labor Standards Act ("FLSA") and the New York State labor law ("NYLL").  Defendants had good professional

and business reasons for setting up two related separate operations. But those non-pretextual business reasons do not affect workers' rights to overtime.

Defendants have moved to dismiss for failure to allege that defendants are joint employers. The motion is denied. After an evidentiary hearing the court finds that a motion for summary judgment is not viable; the case is set down for trial. *See* Hr'g Tr., May 24, 2017 ("Hr'g Tr.").

By treating the two entities as one for compensation purposes, the law leans strongly in favor of protecting workers' wage rights over employers' rights to run an efficient business. *See, e.g.*, *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("[T]the remedial nature of the [labor law] statute . . . warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" (quoting *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir. 1984))). The employer cannot reduce these worker rights by contract or organization of its operations:

> The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, "labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." 29 U.S.C. § 202(a). In contrast to the Labor Management Relations Act, which was designed to minimize industrial strife and to improve working conditions by encouraging employees to promote their interests *collectively*, the FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive "'[a] fair day's pay for a fair day's work'" and would be protected from "the evil of 'overwork' as well as 'underpay.'" *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 578, 62 S. Ct. 1216, 1220, 86 L. Ed. 1682 (1942), quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt). . . . This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that *FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate*.

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739-40 (1981) (alterations in original) (third emphasis added) (footnotes and internal citations omitted).

## II.     Facts

Plaintiffs Kaisha Murphy and Shana-Kay McDougall were employed as education and childcare professionals by defendants HeartShare Human Services of New York, Roman Catholic Diocese of Brooklyn (which operates the "Residence") and HeartShare Education Center (which operates the "School").  Am. Compl., May 16, 2017, ECF No. 22-1 ("Am. Compl."), at ¶ 1.  The non-profit School offers classes for students with developmental and learning disabilities, and the non-profit Residence houses these students who attend the School and require full-time residential care.  *Id.* at ¶¶ 52-53.

Ms. Murphy worked as an assistant teacher for the School from 2011 to 2016, for approximately 35 hours per week.  *Id.* at ¶¶ 65, 70.  Her shifts at the School were from 8:00 a.m. to 2:30 p.m.  *Id.* at ¶ 70.  After completing her School shift, she usually accompanied her students to the Residence, where she waited for a Direct Support Professional ("DSP") to arrive to take custody of the children.  *Id.* at ¶¶ 73-74.  She became a DSP in 2013 and worked approximately 25 hours per week in the student Residence in addition to some 35 hours as a teacher at the School.  *Id.* at ¶¶ 75-76.

Ms. McDougall worked for the School as a paraprofessional from 2015 to 2016 for approximately 35 hours per week.  *Id.* at ¶¶ 90, 94.  She also worked as a DSP in the Residence.  *Id.* at ¶ 91.  She usually arrived at the Residence at 6:30 a.m., and after assisting her students with their morning routines, accompanied them to the School.  *Id.* at ¶¶ 92-93.  Her shifts at the School were from 8:00 a.m. to 2:30 p.m.  *Id.* at ¶ 94.  She then accompanied her children back to the Residence, where she waited for a DSP to arrive to take custody of the children.  *Id.* at ¶¶ 97-98.  She occasionally worked as a DSP in the afternoon and evening.  *Id.* at ¶ 99.

Plaintiffs were compensated separately for their work at the School and the Residence through separate paychecks; each paycheck reflected the number of hours plaintiffs worked at one entity. *Id.* at ¶¶ 3, 80-89, 103-106. The School distributed an annual "Notice and Acknowledgement of Wage Rate and Designated Payday Under Section 195.1 of the New York State Labor Law." It states that Ms. Murphy and Ms. McDougall were eligible for overtime pay. *Id.* at ¶¶ 7, 77, 100.

Whenever plaintiffs worked more than 40 hours at *either* the School or the Residence, they received overtime pay for the amount of time they worked at that entity. But, they did not receive overtime pay for more than 40 hours per week in the School and the Residence *combined*. *Id.* at ¶¶ 3, 80-89, 103-106. Plaintiffs allege that they routinely worked in excess of 40 hours per week combined between the School and the Residence, and that they should have received overtime pay for the combined work periods. *Id.* at ¶¶ 79, 102, 107-120. They allege violations of the FLSA, the NYLL, and breach of contract under state law. *Id.* at ¶¶ 107-126.

Defendants move to dismiss on the ground that the School and the Residence are, and operate as, separate entities and have each separately met their overtime obligations under the FLSA and NYLL. *See* Mem. of Law in Supp. of Defs.' Joint Mot. to Dismiss Pls.' Compl., ECF No. 10, Mar. 29, 2017 ("Defs.' Mem.").

## III. Law

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of claims when the pleading party has failed "to state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable

inferences in plaintiffs' favor. *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010); *Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 132 (E.D.N.Y. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Pleadings that "are no more than conclusions[ ] are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679. The court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### B. Overtime under FLSA and NYLL

The FLSA and the NYLL provide minimum wage and overtime pay requirements for covered, non-exempt workers who are employed by an enterprise engaged in commerce. 29 U.S.C. § 201 *et seq.*; N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 142-2.1; 12 N.Y.C.R.R. § 142-2.2. Both mandate that employers compensate employees at one-and-a-half times their normal hourly rate for all hours worked in excess of 40 each week.

### C. Joint Employment

Because the relevant sections of the FLSA and NYLL apply only to employers, plaintiffs must plausibly plead facts demonstrating that the School and the Residence were in effect jointly their single employer in order for their claims to survive. Defendants' motion turns on the single question: were the two entities one for the purposes of computing overtime?

The FLSA defines an "employer" more broadly than the common law to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA's definition of "employer" applies to "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." *See* 29 U.S.C. §§ 203(a), (d).

The "striking breadth" of the FLSA's definition of "employ" "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *see also Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729 (1947) ("This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category." (internal quotation marks omitted)). "[E]mployment for FLSA purposes [i]s a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

Under regulations promulgated by the Department of Labor ("DoL"), FLSA overtime pay requirements apply to both single and joint employers. 29 C.F.R. § 791.2(a) ("[A]ll joint employers are responsible, *both individually and jointly*, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek." (emphasis added)).

### 1. Vertical Employment

The problem of joint employment has been analyzed as involving two types: horizontal and vertical joint employment. Courts have held that vertical joint employment exists "when an employee of one employer (referred to . . . as an 'intermediary employer') is also, with regard to

6

the work performed for the intermediary employer, economically dependent on another employer."

Opinion Letter from U.S. Dep't of Labor, Wage & Hour Div., 2016 WL 284582, at *4 (Jan. 20,

2016) ("2016 DoL Opinion"). "Examples of situations where vertical joint employment might

arise include garment workers who are directly employed by a contractor who contracted with the

garment manufacturer to perform a specific function." 2016 DoL Opinion, at *8 (citing *Zheng v.*

*Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003)). Nurses placed at a hospital by staffing

agencies is another example. 2016 DoL Opinion, at *8 (citing *Barfield v. N.Y. City Health &*

*Hosps. Corp.*, 537 F.3d 132, 143-49 (2d Cir. 2008)). "[T]he vertical joint employment analysis .

. . examines the *economic realities* of the relationships . . . to determine whether the employees are

economically dependent on those potential joint employers and are thus their [joint] employees."

2016 DoL Opinion, at *4 (emphasis added).

"In assessing the 'economic reality' of a particular employment situation," the Court of

Appeals for the Second Circuit has "identified different sets of relevant factors based on the factual

challenges posed by particular cases." *Barfield*, 537 F.3d at 142; *Teri v. Spinelli*, 980 F. Supp. 2d

366, 374 (E.D.N.Y. 2013); *see also Zheng*, 355 F.3d at 66 (explaining the complex history of

"competing economic reality tests"); 2016 DoL Opinion, at *11 ("[T]he economic realities factors

. . . vary somewhat depending on the court, but any formulation must address the 'ultimate inquiry'

of economic dependence. In applying any other relevant factors, the broad scope of joint

employment under the FLSA . . . must be recognized.").

In *Carter*, the Court of Appeals for the Second Circuit established a four-part "formal

control" test to determine the "economic reality" of a putative employment relationship,

specifically "whether the alleged employer (1) had the power to hire and fire the employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3) determined

the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12 (internal quotation marks and citation omitted); *Teri*, 980 F. Supp. 2d at 374. That court extended the test in *Brock v. Superior Care* to the following non-dispositive, non-exclusive five factors:

> (1) [T]he degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058-59 (2d Cir. 1988).

In *Zheng*, the same court identified six flexible non-exhaustive elements to help determine whether an employer lacking formal control under the *Carter* factors could still exercise "functional control" over an employee:

> (1) whether [the alleged joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [original employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [alleged joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the purported joint employer].

*Zheng*, 355 F.3d at 72; *see also Teri*, 980 F. Supp. 2d at 374.

In *Barfield*, it warned that there is "no rigid rule for the identification of an FLSA employer," and instead applied the "nonexclusive and overlapping [*Carter* and *Zheng*] factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield,* 537 F.3d at 143 (internal quotation marks and citation omitted).

"[E]conomic reality is determined based upon *all* the circumstances, [and] any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition."

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *see also Zheng,* 355 F.3d at 71. "A district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship." *Teri* at 374 (citing *Zheng,* 355 F.3d at 71-72).

### 2. Horizontal Employment

Horizontal joint employment exists when "two (or more) employers each separately employ an employee and are sufficiently associated with or related to each other with respect to the employee. *See* 29 C.F.R. 791.2." 2016 DoL Opinion, at *4. "[T]here is typically an established or admitted employment relationship between the employee and each of the employers, and often the employee performs separate work or works separate hours for each employer. Thus, *the focus of a horizontal joint employment analysis is the relationship between the two (or more) employers*." *Id.* (emphasis added). Examples of such a relationship are "where a waitress works for two separate restaurants that are operated by the same entity and the question is whether the two restaurants are sufficiently associated with respect to the waitress such that they jointly employ the waitress" or "where a farmworker picks produce at two separate orchards and the orchards have an arrangement to share farmworkers." *Id.* at *5.

Horizontal analysis relies upon the factors enumerated in 29 C.F.R. § 791.2 to determine whether the employee performed work that simultaneously benefited two employers:

> If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act.

29 C.F.R. 791.2(a). But,

> [I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), *all of the employee's work for all of*

*the joint employers during the workweek is considered as one employment* for purposes of the Act.

*Id.* (emphasis added).  Joint employers must comply with FLSA overtime provisions.  *Id.*

The regulations offer guidance for this fact-based determination:

*Where the employee* performs work which simultaneously benefits two or more employers, or *works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist*:
(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (emphasis added) (footnotes omitted).

The DoL has issued opinion letters to guide the determination of whether several employers should be treated as a joint employer under the FLSA.  *See, e.g.*, 2016 DoL Opinion, at *1 ("Through its enforcement efforts, the Department of Labor's Wage and Hour Division . . . regularly encounters situations where more than one business is involved in the work being performed and where workers may have two or more employers. . . . *The growing variety and number of business models and labor arrangements have made joint employment more common*. In view of these evolving employment scenarios, the Administrator believes that additional guidance will be helpful concerning joint employment." (emphasis added) (footnotes omitted)); 29 U.S.C. 201, *et seq*.

"[T]he focus should be on the relationship (and often the degree of association) between the two (or more) potential joint employers with respect to the employee and all of the relevant facts of the particular case."  2016 DoL Opinion, at *6.  The DoL has determined that answers to

the following questions may be useful in assessing the degree of association between potential

horizontal joint employers:

- who owns the potential joint employers (i.e., does one employer own part or all of the other or do they have any common owners);
- do the potential joint employers have any overlapping officers, directors, executives, or managers;
- do the potential joint employers share control over operations (e.g., hiring, firing, payroll, advertising, overhead costs);
- are the potential joint employers' operations inter-mingled (for example, is there one administrative operation for both employers, or does the same person schedule and pay the employees regardless of which employer they work for);
- does one potential joint employer supervise the work of the other;
- do the potential joint employers share supervisory authority for the employee;
- do the potential joint employers treat the employees as a pool of employees available to both of them;
- do the potential joint employers share clients or customers; and
- are there any agreements between the potential joint employers.

*Id.* at *6-*7; *see also* 29 C.F.R. 791.2(b).

> Factors that are relevant in finding joint employment include, for example, whether there are common officers or directors of the companies; the nature of the common management support provided; whether employees have priority for vacancies at the other companies; whether there are any common insurance, pension or payroll systems; and whether there are any common hiring seniority, recordkeeping or billing systems.

Opinion Letter Fair Labor Standards Act (FLSA), 2005 WL 6219105, at *2 (June 14, 2005) ("2005

DoL Opinion").

## IV. Application of Law to Facts

### A. Horizontal Employment

Courts in this circuit apply common sense business analysis of the workers' simultaneous

relationships to the employer entities. They do not generally explicitly distinguish between

horizontal and vertical joint employment tests. For example, in *Moon v. Kwon*, the District Court

for the Southern District of New York found several employers were acting jointly when they

failed to pay overtime wages to a hotel employee under the FLSA and NYLL. *Moon v. Kwon*, 248

F. Supp. 2d 201 (S.D.N.Y. 2002).  Even though the court did not explicitly state it, the case could have been analyzed as involving a horizontal joint employment relationship.  The plaintiff was employed as a maintenance worker in a hotel, and the hotel's manager regularly directed the plaintiff to work in affiliate locations, such as apartment buildings owned by the manager, a grocery store owned by the manager's brother, and the manager's own apartment.  *Id.*  The court applied both the "economic realities" (vertical) *and* the test laid out in 29 C.F.R. § 791.2(b) (horizontal), finding that defendants were jointly and severally liable under *both* tests.  *Moon*, 248 F. Supp. 2d at 236-38.

> When determining whether a given person is an "employer" for purposes of FLSA, the overarching concern is whether the alleged employer possessed the power to control the workers in question . . . with an eye to the "economic reality" presented by the facts of each case . . . [and] [a]s set forth in the Department of Labor's interpretive regulations of FLSA, two or more employers may be found to be "joint employers" where an employee performs work which simultaneously benefits two or more employers, or works at two or more employers at different times during the workweek [29 C.F.R. § 791.2(b)]."

*Id.* (internal quotation marks and citations omitted)); *see also Paz v. Piedra*, No. 09-CIV-03977, 2012 WL 12518495, at *4-*5 (S.D.N.Y. Jan. 12, 2012) (applying the "economic realities" test to determine whether corporate owners of restaurants that employed plaintiffs were joint employers, but referring to 29 C.F.R. § 791.2(b)).

The vertical "economic realities" test is applied even in what could be called horizontal employment situations because "our case law contains more examples of such 'vertical' joint employment than examples of 'horizontal' joint employment of the type in question here."  *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003).  Several courts outside of this circuit have emphasized that the "economic realities" test only applies to vertical employment scenarios.  *Id.* (rejecting the "economic realities" test because "it applies only to circumstances in which a company has contracted for workers who are directly employed by an intermediary company," a

vertical relationship); *Tun Cun v. Cafe Tiramisu, LLC*, No. A124985, 2010 WL 2680075, at *8 n.11 (Cal. Ct. App. July 7, 2010) ("Courts have also looked to the '*economic reality*' behind the employers' relationship in cases involving a 'vertical' relationship, such as where it is alleged that a parent corporation is a joint employer with its subsidiary under FLSA. . . . However, the 'economic reality' test has been deemed inappropriate for 'horizontal' employer relationships, such as that alleged here." (emphasis added) (internal quotation marks and citations omitted)); *see also* AMERICAN BAR ASSOCIATION SECTION ON LABOR AND EMPLOYMENT LAW, EMPLOYMENT RIGHTS AND RESPONSIBILITIES COMMITTEE, JOINT EMPLOYER LIABILITY UNDER THE FLSA: WAGE AND HOUR CLAIMS BY EMPLOYEES OF SUBCONTRACTORS AND LITIGATION ISSUES INVOLVING UNDOCUMENTED WORKERS 4 n.18 (2016) ("Cases where the entities alleged to be joint employers have common ownership are not analyzed under the 'economic realities' test. Those cases are deemed by courts to be of 'horizontal' joint employment and are analyzed using the regulations found in 29 CFR 791.2(b).").

In the instant case, the parties agree that the horizontal relationship test applies. Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, Apr. 12, 2017, ECF No. 17 ("Pls.' Opp'n Mem."), at 5 ("The horizontal joint employer theory of liability is applicable here because it is undisputed that the Residence and School both directly employed Ms. Murphy and Ms. McDougall."); Defs.' Reply to Pls.' Opp'n to Defs.' Joint Mot. to Dismiss Pls.' Compl., Apr. 19, 2017, ECF No. 18 (Defs.' Reply Mem."), at 2 ("The parties agree that the Complaint attempts to plead horizontal joint employment."). A vertical employment structure – which typically involves an intermediary employer (such as a staffing agency or contractor) and another employer who engages the intermediary to provide workers – is not present here.

"Economic realities" factors are applied to determine whether a defendant who is claiming not to be an employer should be considered one under the FLSA. *See Zheng*, 355 F.3d at 67-68 (noting that the "economic realities" test factors "have been used primarily to distinguish independent contractors from employees, because . . . they do not bear directly on whether workers who are already employed by a primary employer are also employed by a second employer. Instead, they help courts determine if particular workers are independent of *all* employers.").

In the present case, there is no dispute that both the School and the Residence were plaintiffs' employers, the question is whether they should be considered a *joint* employer for overtime purposes. Many of the *Carter*, *Zheng*, and *Barfield* factors would be inapplicable in the instant case, because they rest on the inquiry of whether a person or entity should be considered an employer.

Given the parties' consensus that only on the horizontal employment test set forth in the DoL's regulations and administrative interpretations applies, the court applies that test and finds joint employment. *See* 2016 DoL Opinion; 2005 DoL Opinion; *see also Chao*, 346 F.3d at 917.

### 1.  29 C.F.R. § 791.2

As stated at the hearing, Plaintiffs' allegations are sufficient to meet the standard set out in 29 C.F.R. § 791.2(b).  Hr'g Tr. at 43:8-13.

The amended complaint details that Ms. Murphy and Ms. McDougall were employed at the School, and for all or part of that employment period, they also worked for the Residence.  Am. Compl. at ¶¶ 65-66, 90-92.  Some of their responsibilities – such as accompanying the students back and forth between the Residence and the School – benefitted both of their employers and required coordination between the two employers.  *Id.* at ¶¶ 71-76, 92-99.  They received paychecks from both institutions whenever they worked at both entities during a particular pay

period.  *Id.* at ¶¶ 3, 80-89, 103-106.  These allegations are sufficient to conclude that plaintiffs worked for both the School and the Residence during the work week.  They squarely fall within the first category contemplated by the regulation.  29 C.F.R. § 791.2(b)(1) ("Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist . . . [w]here there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees.").

Plaintiffs' employment arrangement also falls into the second category of the regulation: in sharing employees' services, the School and the Residence acted "directly or indirectly in the interest of the other employer."  29 C.F.R. § 791.2(b)(2).  In order for plaintiffs to accompany students between the two entities and eventually work at both the School and the Residence, the employers coordinated plaintiffs' work assignments.  *See Moon*, 248 F. Supp. 2d at 238 (finding horizontal joint employment where defendant employers "not only accommodated [plaintiff's] work assignments at [various defendant entities], but often actively instructed [plaintiff] to perform these off-site tasks").

### 2.  Additional 29 C.F.R. § 791.2 Factors

Plaintiffs' allegations also meet several of the DoL's nine factors indicative of horizontal employment.  They plead that HeartShare Education is a wholly owned subsidiary of HeartShare Human Services – a contention without factual basis – which plaintiffs claim establishes the first factor (common ownership) and ninth factor (agreements between the employers).  Am. Compl. at ¶ 17; Pls.' Opp'n Mem. at 6.  They argue that the same supervisor oversaw plaintiffs' work at the School and the Residence, which establishes the second factor (overlapping managers or executives), third factor (shared control over operations), and sixth factor (shared supervisory

authority).  Am. Compl. at ¶¶ 61-64; Pls.' Opp'n Mem. at 6.  Plaintiffs also plead that HeartShare Education and HeartShare Human Services operate out of the same headquarters, which they claim establishes the fourth factor (intermingled operations).  Am. Compl. at ¶ 16-17, 83, 106; Pls.' Opp'n Mem. at 6.  Lastly, they argue that the eighth factor (shared clients) is met because HeartShare Education and HeartShare Human Services serve the same students.  Am. Compl. at ¶ 67-69; Pls.' Opp'n Mem. at 7.

Defendants argue that plaintiffs' complaint is superficial and that none of these allegations, taken alone, would be sufficient to plausibly allege joint employment.  *See generally* Defs.' Reply Mem.  It is argued that plaintiffs' allegation that the same person supervised plaintiffs at the School and Residence is, by itself, insufficient to survive a motion to dismiss.  At most, this allegation satisfies the second factor promulgated by the DoL – overlapping managers – but it does not show that the School and Residence shared control over operations and supervisory authority over employees.  Defs.' Reply Mem. at 4-6.  Nor, defendants contend, is plaintiffs' allegation that HeartShare Education Center and HeartShare Human Services share an address by itself decisive in showing intermingled operations between employers.  *Id.* at 7; *See Cannon v. Douglas Elliman, LLC*, No. 06-CV-7092, 2007 WL 4358456, at *4 (S.D.N.Y. Dec. 10, 2007) (rejecting joint employment theory despite allegations that defendant employers used the same office, because sharing an office is "common in New York City and reveals nothing about the interactions between the parties that took place in that office.").  Plaintiffs' allegation that HeartShare Education Center is a wholly owned subsidiary of HeartShare Human Services alone would not necessarily establish joint employment.  Defs.' Reply Mem. at 7-8; *Paz*, 2012 WL 12518495, at *7 (finding no joint employment, explaining "[t]he mere fact that each [c]orporate [d]efendant is owned in whole or

16

major part by the same persons simply does not permit [the][c]ourt to disregard their distinct legal statuses.")

Taken together, plaintiffs' allegations do establish a plausible claim that the School and the Residence acted as horizontal joint employers. Courts must have great latitude in determining whether a joint employment relationship exists in order to comply with the spirit of overtime law – designed to protect the worker. 2016 DoL Opinion, at *3 ("The concept of joint employment, like employment generally, should be defined expansively under the FLSA. The concepts of employment and joint employment under the FLSA . . . are notably broader than the common law concepts of employment and joint employment, which look to the amount of control that an employer exercises over an employee." (internal quotation marks and citations omitted)). The standard promulgated by the DoL is flexible; plaintiffs are not required to allege each of the nine horizontal employment factors. *Id.*, at *6-*7 (explaining that the nine factors "*may* be relevant when analyzing the degree of association between . . . potential horizontal joint employers . . . This is not an all-inclusive list of facts that could potentially be relevant to the analysis. Moreover, *not all or most of the foregoing facts need to be present for joint employment to exist*. Rather, these facts can help determine if there is sufficient indication that the potential joint employers are associated with respect to the employee and thus share control of the employee.").

Accepting all factual allegations in the complaint and in plaintiffs' hearing testimony as true, there exists a significant degree of interrelatedness between the School and Residence. Prior to 2007, HeartShare Human Services provided educational services for preschoolers. There was a shortage of special education institutions in New York, and in 2007, HeartShare Human Services was approached the New York State Education Department and the New York City Department of Education to create a school for school-aged children with special needs. Under City and State

supervision, HeartShare Education Center was founded as a non-profit and established the School in 2007. Hr'g Tr. at 8:20-13:2. Because some of the School's students could no longer live with their families, had lost their parents, or required additional care, HeartShare Human Services established the Residence in 2011. *Id.* at 14:14-15:25.

The Residence and School are separate entities controlled by separate non-profit organization, but they serve the same clients. All of the children who live in the Residence either attend the School or have graduated from it, and are awaiting jobs. Before a student can be accepted into the Residence, the director of the School determines whether the child meets the criteria of the School. Hr'g Tr. at 14:14-18:20. The Residence was created explicitly to assist students who were attending the School but required full-time residential care:

> THE COURT: So this residence, as I understand it, was established in order to coordinate with the school to take care of these children who could not live at home and in order to get the schooling needed the residence?
>
> MS. TOLEDO: Yes.
>
> …
>
> THE COURT: But you do not take people in your residence unless they are in [the] school or have been in [the] school?
>
> MR. WEBB: That's right.
>
> MS. MUSE: Yes.
>
> THE COURT: That is, the residence is shaped to meet the needs of the kids in the school?
>
> MS. MUSE: Yes.
>
> . . .
>
> MR. SARNA: But they are two distinct separate entities.
>
> THE COURT: There is no doubt about that.

Hr'g Tr. at 17:4-20:17.

The two entities share a physical address, share a playground accessible from both buildings, are immediately adjacent to each other, and are headquartered at the same place. Am. Compl. at ¶¶ 16-19, 53-54. Hr'g Tr. at 7:16-8:4. Employees use the same identification card to enter both the School and the Residence, which lists HeartShare Human Services as the employer. *Id.* at 24:14-16, 25:10-17. HeartShare Human Services' 2014 IRS Form 990 lists HeartShare Education Center as a "related tax-exempt organization." Decl. of Owen H. Laird, May 25, 2017, ECF No. 26, at Ex. A. Plaintiffs' work at the School and the Residence was overseen by the same person. Am. Compl. at ¶ 61. To save on overhead costs, the School and the Residence use the same accounting and human resources services to issue paychecks, manage employee benefits, maintain records, and oversee employee training programs. Hr'g Tr. at 25:10-29:11; Am. Compl. at ¶¶ 56-58. The School and the Residence both mandate that employees complete cardiopulmonary resuscitation ("CPR") and Services for Kids in Primary Care ("SKIP") training. HeartShare Human Services administers training, which satisfies the CPR and SKIP requirements of both the School and the Residence. Hr'g Tr. at 37:11-38:24.

The School and the Residence had separate hiring and firing processes, provided separate paychecks and employee benefits, and enforced separate conduct rules. Hr'g Tr. at 39:15-40:18. But many employees who were employed by both the School and the Residence, like plaintiffs, had overlapping duties at the two entities. Plaintiffs supervised the same children at both the School and the Residence. Hr'g Tr. at 24:2-5. It follows that some of plaintiffs' duties were shared between the two entities, since they were assisting the same children throughout the day. For example, dressing a child would occur only at the Residence, and teaching duties would occur only at the School. But tasks such as assisting that child with eating, using the toilet, and moving around

are not specific to the Residence or the School and would occur in both places. It would be impossible to conclude that plaintiffs' duties were completely separate at the two entities.

Even when Ms. Murphy was only employed by the School, her responsibilities included picking students up from, or dropping students off at, the Residence. It was part of her duty to transition students between the custody of the School and the Residence, which indicates interrelatedness between the two entities. Hr'g Tr. at 21:17-22:4. Once Ms. Murphy was also employed by the Residence, like Ms. McDougall, her duties at the two entities were even further intermingled. 2016 DoL Opinion, at *7 (a factor indicative of joint employment is "treat[ing] the employees as a pool of employees available to both [employers]").

All plaintiffs' allegations, taken together, are more than sufficient to make out a claim that defendants are so interconnected in their operations that they should be considered to be joint employers for purposes of overtime liability. *See Flannigan v. Vulcan Power Grp., LLC*, 642 F. App'x 46, 52 (2d Cir. 2016) (finding that a jury verdict of joint employment based in part on (1) employers operating out of the same office, (2) sharing at least one administrative employee, and (3) being controlled by the same officer was not manifestly unjust); *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305-06 (4th Cir. 2006) (finding that "the entire employment arrangement fits squarely within the third example of joint employment in [29 C.F.R. § 791.2(b)]" because the employers were both involved in the hiring of the workers; played some role in scheduling, discipline, and terminations; and shared responsibility for supplying the workers with equipment).

It is difficult to see how two employers which were in part created to serve the same clients, are headquartered at the same address, physically operate out of the same address, share employees, share an accounting and human resources department, require employees to perform

tasks that simultaneously benefit both employers, and share a name – HeartShare – are "completely disassociated" with respect to plaintiffs' employment.

## B. NYLL

Courts apply the same horizontal joint employment test under federal and New York labor law. *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005) ("Courts hold that the New York Labor Law embodies the same standards for joint employment as the FLSA."); *Flannigan*, 642 F. App'x at 52 (same); *Paz*, 2012 WL 12518495 at *5 ("The NYLL's definition of employment is nearly identical to the FLSA's . . . Accordingly, this Court's conclusions with respect to each defendant's status as an employer under the FLSA apply equally to the defendants' statuses as employers under the NYLL.").

Because plaintiffs have pled facts sufficient to establish that defendants were joint employers under the FLSA, plaintiffs' NYLL claims will not be dismissed.

## C. Breach of Contract Claim

Plaintiffs' claim that defendants jointly breached their employment contract is premised on the School and Residence being operated as joint employers. Defendants' motion to dismiss the breach of contract claim is denied for the reasons already noted. A contract to ignore workers' statutory overtime rights is void as against public policy.

## V. Conclusion

Plaintiffs have pled with sufficient particularity that defendants operated as joint employers. Defendants' motion to dismiss is denied. The court has examined workers and supervisors under oath and finds no merit in a possible motion for summary judgment.

The case is set down for trial on September 18, 2017 at 2:00 p.m. in Courtroom 10B South. A jury will be selected before a magistrate judge that morning, at a time set by the magistrate judge.

*In limine* motions will be heard on August 14, 2017 at 10:30 a.m. in Courtroom 10B South.

By August 4, 2017, the parties shall submit to the court proposed jury charges and verdict sheets, *in limine* motions, and any supporting briefs. They shall also exchange and file with the court: (1) lists of pre-marked exhibits proposed for use at trial, together with copies of all exhibits; (2) lists of potential witnesses together with brief summaries of proposed testimony; and (3) stipulations with respect to all undisputed facts.

Any disputes related to briefing schedules or discovery are respectfully referred to the magistrate judge.

SO ORDERED.

/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Date: June 1, 2017
Brooklyn, New York