UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| KAISHA MURPHY *and* SHANA-KAY MCDOUGALL, *on behalf of themselves and those similarly situated* | ) ) ) ) ) |  |
| Plaintiffs, | ) ) | |
| v. | ) | Case No. 1:17-cv-1033 (SMG) |
| | ) | |
| HEARTSHARE HUMAN SERVICES OF NEW YORK, *and* HEARTSHARE EDUCATION CENTER | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF PROVISIONAL SETTLEMENT CLASS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   SUMMARY OF THE CASE .................................................................1

III.  THE SETTLEMENT AGREEMENT ...................................................2

     A.    Definition of the Proposed Settlement Class ..............................2

     B.    Settlement Amount ......................................................................3

     C.    Release of Claims .......................................................................3

     D.    Settlement Administration ..........................................................5

         1.    Notice to Class Members ..................................................5

         2.    Procedure for Exclusion ...................................................6

         3.    Procedure for Objecting ...................................................6

IV.  THE PROPOSED SETTLEMENT FULLY SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL ...........................................................7

     A.    Legal Standard ............................................................................7

     B.    The Proposed Settlement Falls Within the Range of Reasonableness.........8

     C.    The Proposed Notice and Plan For Disseminating Notice Satisfy Due Process .........................................................................................9

V.   THE COURT SHOULD ISSUE AN ORDER CONDITIONALLY CERTIFYING A SETTLEMENT CLASS ...................................................................11

     A.    The Criteria For Conditional Certification Of A Settlement Class............11

     B.    The Members Of The Class Are Sufficiently Numerous...........................12

     C.    Commonality, Typicality, and Adequacy Exist.....................................144

         1.    Common Issues Of Law And Fact Predominate.........................144

         2.    Named Plaintiff's Claims Are Typical Of The Settlement Class ..14

         3.    Named Plaintiff And Her Counsel Will Fairly And Adequately Represent The Class.......................................................................15

     D.    Certification Is Proper Under Rule 23(b)(3) ............................................16

     E.    Proceeding As A Class Action Is Superior To Individual Actions............17

VI.  NAMED PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ...........................................................................................18

VII.  COUNSEL'S ATTORNEYS' FEES ARE REASONABLE ................................19

CONCLUSION...............................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)...................................................................16, 17

*Ansari v. NYU,*
  179 F.R.D. 112 (S.D.N.Y. 1998) ...................................................12

*Caesar v. Chem. Bank,*
  460 N.Y.S.2d 235 (Sup. Ct. 1983), *aff'd,* 483 N.Y.S.2d 16 (1984), *aff'd as modified,* 487 N.E.2d 275 (1985)...................................................13

*Cheeks v. Freeport Pancake House, Inc.,*
  796 F.3d 199 (2d Cir. 2015)...........................................................19

*Clark v. Ecolab, Inc.,*
  Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ...........................................7, 16

*Coleman ex rel. Bunn v. District of Columbia,*
  306 F.R.D. 68, 76-79 (D.D.C. 2015) .............................................13

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
  502 F.3d 91 (2d Cir. 2007)..............................................................16

*Cruz v. Hook-Superx, LLC,*
  No. 09 Civ 7717 (PAC), 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010)..........16

*Damassia v. Duane Reade, Inc.,*
  250 F.R.D. 152 (S.D.N.Y. 2008) ...................................................17

*Diaz v. E. Locating Serv. Inc.,*
  No. 10 Civ. 4082, 2010 WL 2945556 (S.D.N.Y. July 22, 2010) ...................19

*Dziennik v. Sealift, Inc.,*
  No. 05-cv-4659 (DLI)(MDG), 2007 WL 1580080 (E.D.N.Y. May 29, 2007)15

*Friar v. Vanguard Holding Corp.,*
  434 N.Y.S.2d 698 (N.Y. Sup. Ct. App. Div. 1980) .......................................12

*Green v. Wolf Corp.,*
  406 F.2d 291 (2d Cir. 1968)............................................................17

*Han v. Sterling Nat'l Mortg.,*
  No. 09-CV-5589 (E.D.N.Y. Aug. 9, 2012), ECF No. 116.............................19

*Johnson v. Brennan*,
    No. 10-cv-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) ....................17

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)..........................................................................13

*MacNamara v. City of New York*,
    275 F.R.D. 125 (S.D.N.Y. 2011) ..................................................................12

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)..........................................................................14

*Marriott v. Cty. of Montgomery*,
    227 F.R.D. 159 (N.D.N.Y. 2005)..................................................................16

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998)............................................................................7

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ..................................................................16

*In re Michael Milken & Assocs. Secs. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................10

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)........................................................................14

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) ..................................................................16

*O'Brien v. Encotech Constr. Servs., Inc.*,
    203 F.R.D. 346, 350 (N.D. Ill. 2001)............................................................13

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
    772 F.3d 111 (2d Cir. 2014)..........................................................................12

*Palacio v. E*TRADE Financial Corp.*,
    No. 10 Civ. 4030 (RJH) (DCF), 2012 WL 1058409 (S.D.N.Y. Mar. 12,
    2012) ..............................................................................................................11

*In re Prudential Securities Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................................8

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)..........................................................................14

*In re State Street Bank & Trust Co. ERISA Litigation*,
    No. 07 Civ. 8488 (RJH), 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009)...........8

*Thomas v. Meyers Assocs., L.P.*,
    39 Misc. 3d 1217(A) (N.Y. Sup. Ct. 2013)....................................................12

*Toure v. Cent. Parking Sys.*,
    No. 05 Civ. 5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ......15

*In re Traffic Executive Ass'n*,
    627 F.2d 631 (2d Cir. 1980).............................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................................7

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..........................................................................7

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)....................19

**Statutes and Rules**

Fed. R. Civ. P. 23(a) ...........................................................................................11

Fed. R. Civ. P. 41(a)(1)(A)(ii) ...........................................................................19

Fed. R. Civ. P. 23(a)(4)........................................................................................15

Fed. R. Civ. P. 23(b) ...........................................................................................11

Fed. R. Civ. P. 23(b)(3)..........................................................................15, 16, 17

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................10

Fed. R. Civ. P. 23(g) ...........................................................................................18

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................18

Fed. R. Civ. P. 23(g)(1)(B) .................................................................................18

**Other Authorities**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed.
    2002) ...............................................................................................................7

## I.    INTRODUCTION

This is a wage and hour class action brought by Named Plaintiff Kaisha Murphy ("Named Plaintiff" or "Plaintiff") against Defendants HeartShare Human Services of New York ("HeartShare Services") and HeartShare Education Center ("HeartShare Education") (collectively, "Defendants"), primarily alleging that Defendants failed to pay overtime wages to employees of both HeartShare Education and HeartShare Service who, when their hours worked at both Defendant-entities are combined, sometimes exceeded the 40-hour-per-week statutory threshold. Named Plaintiff and Defendants (collectively, the "Parties") have entered into a Settlement Agreement and Release of Claims ("Settlement" or "Settlement Agreement") which provides for a total non-reversionary settlement amount of $107,647.77.  Named Plaintiff and Defendants now jointly move for preliminary approval of the Settlement Agreement and for conditional certification of the settlement class.[1]

## II.    SUMMARY OF THE CASE

HeartShare Education runs a non-profit school for students with developmental and learning disabilities.  HeartShare Services operates a residence for certain HeartShare Education students who require full-time residential care.  Named Plaintiff was employed by the Defendants: she worked both at HeartShare Education—as an assistant teacher—and at HeartShare Services as a direct support professional.

On February 23, 2017, Named Plaintiff filed a putative class action alleging the Defendants failed to pay her overtime in violation of the Fair Labor Standards Act (FLSA) and the New York

---

[1]    Capitalized but undefined terms that appear in the present Motion and Memorandum of Law have the same meaning as that set forth in Section II of the Settlement Agreement.

State labor law (NYLL), and alleging breach of contract.[2]  Specifically, Named Plaintiff claimed that on weeks where she worked in excess of 40 hours at HeartShare Education and HeartShare Services combined, she did not receive overtime pay.  Named Plaintiff filed a motion to enter an amended complaint on May 16, 2017.  That motion was granted.

The Defendants moved to dismiss the Complaint on the grounds that the Defendants operate as separate entities, meaning they were not joint employers for the purposes of calculating overtime under the FLSA and NYLL, and that they have each separately met their overtime obligations under the FLSA and NYLL.  That motion was denied.

During discovery, Named Plaintiff's counsel reviewed representative payroll information for the potential class members including rates of pay and hours worked.  The Defendants also provided a sworn statement to Named Plaintiff regarding the calculation of alleged unpaid overtime for potential class members.

After a settlement meeting on June 9, 2017, the Parties negotiated the Settlement Agreement that forms the basis for the present Motion.

### III.   THE SETTLEMENT AGREEMENT

#### A.   Definition of the Proposed Settlement Class

For purposes of the settlement only, the Parties have agreed that the proposed Settlement shall consist of "all current and former non-exempt workers who worked as Direct Support Professionals for HeartShare Human Services or Assistant Teachers for HeartShare Education Center at any time from February 23, 2011 through the date of the Preliminary Approval Order."  Settlement Agreement § II.U.  There are 32 potential class members.

---

[2]      This matter initially included a second Named Plaintiff, Shana-Kay McDougall.  On August 22, 2017, Ms. McDougall voluntarily dismissed her claims without prejudice.  *See* Settlement Agreement, Ex. F.

### B.    Settlement Amount

The gross amount of settlement compensation to be paid by the Defendants under the Settlement Agreement is $107,647.77 (hereafter, "Maximum Settlement Distribution"). Settlement Agreement § II.N.  The Maximum Settlement Distribution shall cover both the pro rata payments to Final Settlement Class Members as well as a reasonable enhancement award to Named Plaintiff, upon request by Class Counsel and without opposition from Defendants, of up to $3000.  Separate and apart from the Maximum Settlement Distribution, Defendants agree to pay Class Counsel for reasonable court costs and attorneys' fees upon approval by the Court following request by Class Counsel and without opposition from Defendants, in an amount up to and including 30 percent of the Maximum Settlement Distribution.

Each Final Settlement Class Member shall be eligible to receive a pro rata Settlement Share of the Maximum Settlement Distribution, less the Enhancement Award paid to Named Plaintiff, based on his or her Individual Gross Wages divided by the Total Gross Wages for the entire Settlement Class.  Settlement Agreement § VIII.C.2.a.  Any employer-side payroll taxes and related expenses from the Settlement shall be paid by Defendant.  *Id*.

With the exception of any unclaimed portion of the Maximum Settlement Distribution applied to employer-side taxes, the Maximum Settlement Distribution shall be non-reversionary. *Id*. § II.N.  Any unclaimed funds as a result of the failure to timely cash Settlement Share checks shall be directed by the Defendants to the Office of the New York State Comptroller, Office of Unclaimed Funds, for handling pursuant to New York State's Abandoned Property Law.  *Id*. § VIII.C.4.b.

### C.    Release of Claims

Each Final Settlement Class Member will be bound by the following release of claims:

Effective as of the Final Effective Date and in exchange for the right to receive consideration provided pursuant to this Agreement, each Final Settlement Class Member fully, finally, and forever releases the Released Persons from the Released Claims, including without limitation the NYLL, claims for restitution and other equitable relief, liquidated damages, punitive damages, penalties of any nature whatsoever, and any other benefit claimed on account of the allegations asserted in the operative complaint. The Released Claims specifically include, but are not limited to any claims for overtime, breach of contract, penalties, interest, and attorneys' fees. Final Settlement Class Members understand and agree that upon the court's final approval of the settlement and release of all state law claims for overtime, under the doctrine of res judicata, all federal law claims for overtime under the FLSA based on the allegations in the operative complaint will be precluded. This release shall apply to all Released Claims against Released Persons arising at any point prior to the date of the Preliminary Approval Order. Final Settlement Class Members agree that this Settlement Agreement shall be construed to be, and is, a covenant by Named Plaintiff and all other Final Settlement Class Members, for themselves, their affiliates, agents, successors, and assigns, not to sue, institute, or instigate any legal, equitable, or administrative investigation or proceedings against Defendants for any Released Claims and not to commence, prosecute, or participate in any recovery in any action in this or any other forum (other than participation in the settlement provided herein) in which any of the Released Claims is asserted.

Settlement Agreement § IX.A.1.

The Released Claims also include any claim for taxes associated with any such Released Claim, attorneys' fees and costs against any of the Released Persons arising out of the Settlement of which it is part. *Id*. § IX.A.2.

Class Counsel also agrees to fully and finally release, following Defendants' payment of the approved attorneys' fees payable pursuant to the terms of this Agreement, the Released Persons from any claims they have related to issuance of such payment. *Id*. § IX.A.3.

"Released Claims" in the Settlement refers to:

any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, actions or causes of action contingent or accrued for, or which were alleged in the Complaint or which arise out of facts asserted in the Complaint, whether known or unknown including but not limited to any claims for overtime, breach of contract, penalties, interest, waiting time penalties, and attorneys' fees. The Released Claims shall not include the right of any Settlement Class Member or any Released Person to enforce the terms of the Settlement Agreement.

-4-

*Id.* § II.S.

"Released Persons" in the Settlement refers to:

Defendants, and any parent, subsidiary, affiliate, predecessor or successor, and all agents, employees, officers, directors and attorneys thereof.

*Id.* § II.T.

### D. Settlement Administration

1. <u>Notice to Class Members</u>

The Parties have jointly drafted a Class Notice and Payment Notification and Dispute Form (collectively, the "Notice Packet") to be sent to class members. A copy of the Parties' proposed Class Notice is attached as Exhibit A to the Settlement Agreement. A copy of the Parties' proposed Payment Notification and Dispute Form is attached as Exhibit C to the Settlement Agreement.

The Settlement Agreement provides that within twenty business days of the date of the preliminary approval order, Defendants shall undertake all customary procedures to ensure that they have the best available current addresses of all Class Members and shall send a copy of the Notice Packet to all Class Members via first class Mail. Settlement Agreement § IV.A. The Notice Packet will be provided in both English and Spanish. *Id.* With respect to each Class Notice that is returned as undeliverable before the end of the Exclusion Period, Defendants shall promptly attempt to determine a correct address using a reasonable search method and re-send the Class Notice and Payment Notification and Dispute Form via first class mail to any new address thereby determined. *Id.*

The Payment Notification and Dispute Form notifies Settlement Class Members of their gross wages during the Class Period, of their estimated Settlement Share, and of how to dispute their gross wages, and/or update their contact information. Because this is not a claims-made settlement, Settlement Class Members do not have to return the Payment Notification and Dispute

Form in order to receive money from the Settlement.  Settlement Class Members need only return the Payment Notification and Dispute Form to correct any personal contact information and/or to challenge the gross wages stated on the form.  *Id.* § IV.B.

### 2. Procedure for Exclusion

Any Settlement Class Member may elect to be excluded from the Settlement Class at any time during the Exclusion Period.  To be effective, any such election must be made in writing; must contain the name, address, telephone number, and last four digits of the social security number of the Settlement Class Member requesting exclusion; must be signed by the Settlement Class Member who is electing to be excluded; and must be mailed to the Defendants and postmarked on or before the end of the Exclusion Period.  Any Settlement Class Member who timely requests exclusion in compliance with these requirements: (i) shall not have any rights under this Agreement; (ii) shall not be entitled to receive a Settlement Share; (iii) shall not be entitled to submit an objection to this Agreement; (iv) shall not be a Final Settlement Class Member; and (v) shall not be bound by this Agreement, the Final Approval Order, or the Judgment. Settlement Agreement § V.A.

### 3. Procedure for Objecting

Any Final Settlement Class Member may object to this Settlement, provided that such objections are made in a writing and mailed to the Defendants so that it is postmarked no later than the last day of the Exclusion Period.  Such objection shall include the name and address of the objector and the basis for any objection and, if the objector is represented by counsel, the name and address of the objector's counsel.  Any Final Settlement Class Member who fails to comply with these requirements will be deemed to have waived any right to object and any and all objections to the Settlement.  *Id*. § V.C.

## IV.    THE PROPOSED SETTLEMENT FULLY SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

### A.    Legal Standard

The law strongly favors settlement of class action lawsuits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context" (citation omitted)); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.");  *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement falls within the discretion of the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties," "keep[ing] in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citation omitted).

Preliminary approval is based on an "initial evaluation" of the fairness of the proposed settlement. *Id*. (citing *Newberg* § 11.25). Granting preliminary approval requires only that the court find there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the

court should permit notice of the settlement to be sent to class members (quoting *Manual for Complex Litigation* § 30.41 (3d ed. 1995))).

### B.    The Proposed Settlement Falls Within the Range of Reasonableness

When deciding whether preliminary approval is warranted, courts must simply conclude the settlement "fits within the range of possible approval." *In re State Street Bank & Trust Co. ERISA Litigation*, No. 07 Civ. 8488 (RJH), 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009) (citing *In re Prudential Securities Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209-10 (S.D.N.Y. 1995)).   That is a low bar to clear:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives . . . or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Prudential*, 163 F.R.D. at 209-10.

The Settlement Agreement easily passes that test.  The Parties negotiated the Settlement in good faith and at arm's length, including during an in-person settlement meeting.  The Parties subsequently reviewed updated payroll information to determine the full scope of the alleged unpaid overtime wages at issue.  The settlement negotiations were conducted by highly capable and experienced counsel.  Named Plaintiff's counsel vigorously and effectively advocated for their clients, and they are experienced in handling complex wage and hour class action litigation.  Named Plaintiff and her counsel were prepared to litigate the claims in the action.   Named Plaintiff's counsel will receive no more than 30 percent of the Maximum Settlement Distribution in compensation for their efforts on a purely contingency basis.

The amount of the proposed settlement is also, itself, evidence of its reasonableness, particularly in light of the relative strength of Named Plaintiff's claims and the risk of continued

litigation.  In addition to paying Class Counsel's reasonable attorneys' fees and costs, Defendants

have agreed to distribute to the class a maximum amount of $107,647.77—roughly 70 percent of

the total amount of claimed unpaid overtime—despite the fact that there is a material chance the

Plaintiff will not prevail.   Indeed, Defendants have argued that HeartShare Education and

HeartShare Services should not be considered joint employers because, among other reasons, they

do not share control over operations or supervisory authority over employees.  Further to that point,

the Department of Labor recently withdrew the 2016 opinion letter this Court relied upon in

denying Defendants' motion to dismiss.  Order at 17-18.  Though that guidance made clear that

"not all or most" of the horizontal employment factors "need to be present for joint employment

to exist," that "flexible" standard—as the Court described it—is no longer in effect.  *Id*.  Further,

Plaintiff realizes that she may not be able to proceed on a classwide basis if Defendants

successfully challenge the class based on lack of numerosity, commonality, typicality, adequacy,

superiority or predominance.  Accordingly, when considered in light of the total claimed amount

and the good-faith efforts made by Named Plaintiff's experienced counsel, the settlement clearly

falls within the range of reasonableness.

### C.      The Proposed Notice and Plan For Disseminating Notice Satisfy Due Process

The Notice, attached to the Settlement Agreement as Exhibit A, fully complies with due

process and Rule 23 of the Federal Rules of Civil Procedure, which provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members
> the best notice practicable under the circumstances, including individual notice to
> all members who can be identified through reasonable effort.  The notice must
> clearly and concisely state in plain, easily understood language:
>
> (i)       the nature of the action;
>
> (ii)      the definition of the class certified;
>
> (iii)     the class claims, issues, or defenses;

(iv)     that a class member who does not request exclusion may enter an appearance through an attorney if the member so desires;

(v)      that the court will exclude from the class any member who requests exclusion;

(vi)     the time and manner for requesting exclusion;

(vii)    the date and time of the Final Approval Hearing; and

(vii)    the binding effect of a class judgment on members.

Fed. R. Civ. P. 23(c)(2)(B).

The Class Notice and Payment Notification and Dispute Form satisfy these requirements. Among other things, they: (i) describe the definition of the Settlement Class, the terms of the settlement and the nature of the case; (ii) inform the Settlement Class about counsels' request for attorneys' fees and expenses and Named Plaintiff's Enhancement Award; (iii) instruct Settlement Class members how to object to the settlement or exclude themselves from the settlement via an opt-out request; (iv) explain how settlement funds will be allocated to Settlement Class members; and (v) notify Settlement Class Members of their gross wages during the Class Period, of their estimated Settlement Share, and of how to dispute their gross wages, and/or update their contact information with the Defendants.

Accordingly, the detailed information in the Notice is more than adequate to put Settlement Class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).   Courts have approved class notices even when they provided only general information about a settlement.  *See In re Michael Milken & Assocs. Secs. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").  The Class Notice and Payment Notification and Dispute Form far exceed this bare minimum and fully comply with the requirements of Rule 23(c)(2)(B).

-10-

## V.     THE COURT SHOULD ISSUE AN ORDER CONDITIONALLY CERTIFYING A SETTLEMENT CLASS

### A.     The Criteria For Conditional Certification Of A Settlement Class

Conditional class certification in order to facilitate settlement and the appointment of class counsel promotes judicial economy in several respects, including by enabling parties to avoid the costs of litigating class status while negotiating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing.  *See Palacio v. E\*TRADE Financial Corp.*, No. 10 Civ. 4030 (RJH) (DCF), 2012 WL 1058409, at \*1 (S.D.N.Y. Mar. 12, 2012).  A class action may be maintained if all the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Among other things, Rule 23(b) provides that class actions are appropriate where "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." *Id.* at 23(b)(3).

Named Plaintiff contends that this Action satisfies all of the foregoing criteria.  For purposes of this settlement only, Defendants have stipulated to conditional certification of the proposed class; should this matter be subject to further litigation, Defendants reserve the right to challenge whether class action certification is appropriate.

### B.     The Members Of The Class Are Sufficiently Numerous.

As an initial matter, the Settlement Class at issue here is precisely defined and readily identified.  Specifically, the Settlement Class refers to all current and former non-exempt workers who worked as Direct Support Professionals for HeartShare Services or Assistant Teachers for HeartShare Education at any time from February 23, 2011 through the date of the Preliminary Approval Order.  Class members were identified through a review of Defendants' time records and payroll information.  Thirty-two individuals have been identified as members of the Settlement Class.

"Numerosity is presumed for classes larger than forty members," *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014), but is presumed not satisfied for classes of fewer than 21 members.  *See Ansari v. NYU*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998); *cf. Thomas v. Meyers Assocs., L.P.*, 39 Misc. 3d 1217(A) (N.Y. Sup. Ct. 2013) ("[T]here has been [a] trend 'to regard classes of approximately 30 or less as not being sufficiently numerous, although there are exceptions.").  Rather than apply a "mechanical test," "[e]ach case depends upon the particular circumstances surrounding the proposed class and the court should consider the reasonable inferences and common sense assumptions from the facts before it." *Friar v. Vanguard Holding Corp.*, 434 N.Y.S.2d 698, 706 (N.Y. Sup. Ct. App. Div. 1980).  Those circumstances include, among other things: "(1) the judicial economy of avoiding multiple suits; (2) the geographic dispersion of the proposed class members; (3) the financial resources of the proposed class members; (4) the ability of the proposed class members to file individual suits; and (5) requests for prospective injunctive relief which would involve future class members." *MacNamara v. City of New York*, 275 F.R.D. 125, 137-38 (S.D.N.Y. 2011) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

Here, the Parties submit the proposed class of 32 individuals is sufficiently numerous.  As an initial matter, several courts have certified classes of comparable size.  *See*, *e.g.*, *Caesar v. Chem. Bank*, 460 N.Y.S.2d 235 (Sup. Ct. 1983), *aff'd*, 483 N.Y.S.2d 16 (1984), *aff'd as modified*, 487 N.E.2d 275 (1985) (certification granted to class of 38 persons).  *See also Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76-79 (D.D.C. 2015) (deeming class of 34 persons sufficiently numerous); *O'Brien v. Encotech Constr. Servs., Inc.*, 203 F.R.D. 346, 350 (N.D. Ill. 2001) (class of 30 individuals satisfied numerosity requirement; judicial economy, size of individual claims, financial resources of class members, and ability of claimants to bring individual lawsuits, among other reasons, counseled in favor of certification).  Certification is particularly appropriate here given that the Settlement Class has been precisely defined to include only claims that are virtually identical to one another.  As discussed below, this case involves narrow legal questions.  And though discovery is ongoing, the material facts—namely, the number of hours each proposed class member worked in a given week at HeartShare Services and HeartShare Education, the work performed, and the relationship between HeartShare Services and HeartShare Education—are largely undisputed.  Accordingly, class certification will enable Defendants and potential class members to avoid re-litigating—and the courts to avoid re-hearing—the same case many times over.  Moreover, the financial resources of the proposed class members and their ability to file individual suits also weigh in favor of class certification.  The Direct Support Professionals and Assistant Teachers who comprise the Settlement Class are not highly-paid.  And the potential costs of bringing individual lawsuits, combined with the limited potential recovery for individual class members, would likely prevent many proposed class members from bringing separate lawsuits.

### C.   Commonality, Typicality, and Adequacy Exist.

#### 1.   Common Issues Of Law And Fact Predominate

The commonality requirement is met when a question of law or fact "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Each class member's claim for relief need not be identical; rather, there must be "issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). Classwide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Here, the central question of law and fact is common to the class and predominates over any individual issues, namely whether Defendants are properly categorized as joint employers. Thus, class treatment is appropriate.

#### 2.   Named Plaintiff's Claims Are Typical Of The Settlement Class

The typicality requirement is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). As long as "the same unlawful conduct was directed at or affected both the named plaintiff and the class," the typicality requirement is likely met "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37.

Named Plaintiff's claims in this case are typical of the Settlement Class Members' claims, and all class members, including Named Plaintiff, brings claims arising from the same course of

events and make similar legal arguments.  Like the Settlement Class Members, Named Plaintiff alleges she was an employee of both HeartShare Education and HeartShare Services and did not receive overtime pay when their cumulative hours exceeded 40 in a given week.  Thus, resolving the common questions as they apply to Named Plaintiff will determine Defendants' *prima facie* liability to the class as a whole.  Furthermore, Named Plaintiff's claims could be subject to the same affirmative defenses as the class members.  For these reasons, Named Plaintiff's claims are typical of those of the Settlement Class as a whole.

### 3. Named Plaintiff And Her Counsel Will Fairly And Adequately Represent The Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will "have an interest in vigorously pursuing the claims of the class, and have no interests antagonistic to the interests of other class members."  *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *1 (S.D.N.Y. Sept. 28, 2007) (quoting *Penney* v. *Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05-cv-4659 (DLI)(MDG), 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (citation and internal quotation marks omitted).  Here, Named Plaintiff's interests are directly aligned with those of other class members as they possess and have prosecuted the same claims arising from similar facts and circumstances.  Moreover, Named Plaintiff and her counsel have actively litigated this case from the outset.  Before entering into the Settlement Agreement, Named Plaintiff's counsel reviewed extensive payroll information as well as the sworn statement provided by Defendants regarding the calculation of overtime compensation.  Named Plaintiff and her counsel then engaged in a good faith, arm's length negotiation with Defendants before agreeing to

settle the case for an amount that represents roughly 70% of the claimed unpaid overtime.  Named

Plaintiff and her counsel have, and will continue to, adequately represent the class as a whole.

### D.    Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any

questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed R. Civ. P. 23(b)(3).  This

inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by

representation."  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).

To satisfy Rule 23(b)(3), Plaintiff must show that "the issues in the class action that are

subject to generalized proof, and thus applicable to the class as a whole predominate over those

issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G.

Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (citation and internal quotation marks

omitted).  The essential inquiry is whether "liability can be determined on a class-wide basis, even

when there are some individualized damages issues."  *Marriott v. Cty. of Montgomery*, 227 F.R.D.

159, 173 (N.D.N.Y. 2005) (internal quotation marks omitted).  Simply because a defense "may

arise and affect different class members differently does not compel a finding that individual issues

predominate over common ones."  *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y.

2004) (quoting *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001)).

Where plaintiff and potential class members are "unified by a common legal theory" and by

common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D.

487, 502 (S.D.N.Y. 2005).

The central question in this case is whether Defendants were required to pay overtime

compensation to employees of both HeartShare Education and HeartShare Services where, when

the hours worked at each entity are combined, they exceed the 40-hour-per-week statutory

threshold.  This issue applies to every member of the Class and is the basis upon which Plaintiff

would seek to establish Defendants' liability if the action were litigated through trial.  *See Cruz* v.

*Hook-Superx, LLC*, No. 09 Civ. 7717 (PAC), 2010 WL 3069558, at *3 (S.D.N.Y. Aug. 5, 2010)

("Plaintiffs' allegation is simple and identical across all claims: Defendants have misclassified

employees to escape overtime wage obligations."); *Clark*, 2009 WL 6615729, at *5 (common

factual allegations and common legal theory predominated over factual and legal variations among

class members in settlement of wage and hour misclassification case).  Accordingly, the element

of predominance exists here.

### E.    Proceeding As A Class Action Is Superior To Individual Actions

The second part of the Rule 23(b)(3) analysis examines whether "the class action device

[is] superior to other methods available for a fair and efficient adjudication of the controversy."

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at

the very core of the class action mechanism is to overcome the problem that small recoveries do

not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to the superiority inquiry,

including: class members' interests in individually controlling the prosecution or defense of

separate actions; whether individual class members wish to bring, or have already brought,

individual actions; and the desirability of concentrating the litigation of the claims in the particular

forum.

Here, Settlement Class members have limited financial resources with which to prosecute

individual actions; indeed, Named Plaintiff is unaware of any pending individual lawsuits filed by

Settlement Class members arising from the same allegations.  Furthermore, employing the class

device will not only achieve economies of scale, but will conserve the resources of the judicial

system and preserve public confidence in the integrity of the system by avoiding the waste and

delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. *See Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011) (class adjudication conserves judicial resources); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).   Thus, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the claims asserted in this action.

### VI.   NAMED PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Named Plaintiff's counsel, Walker G. Harman, Jr. and Owen H. Laird of The Harman Firm, LLP, should be appointed as Class Counsel.   Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).   The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.   Fed. R. Civ. P. 23(g)(1)(B).   The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) (advisory committee's note).

Named Plaintiff's Counsel meet all of these criteria.   Counsel have performed substantial work identifying, investigating, analyzing, prosecuting, and settling Plaintiff's and Class members' claims.   Additionally, Named Plaintiff's Counsel have substantial experience prosecuting and settling class actions, including wage and hour class actions, and courts have repeatedly found Named Plaintiff's Counsel to be adequate class counsel in similar class actions.

Walker G. Harman, Jr. founded The Harman Firm in 2003.  The Harman Firm, and Mr. Harman's practice, is focused almost exclusively on employment law, including discrimination, executive compensation and wage and hour litigation on behalf of employees.  Mr. Harman has represented employees in dozens of complex wage and hour disputes, including in collective and class actions.

Owen H. Laird is an associate with The Harman Firm.  Mr. Laird previously served as Labor Law Clerk for the Major League Baseball Players Association.  Since 2014, Mr. Laird has participated in several complex wage and hour disputes, including class actions.

Named Plaintiff's counsel are clearly qualified to be Class Counsel.

## VII.    COUNSEL'S ATTORNEYS' FEES ARE REASONABLE

As stated above, the Settlement Agreement provides for attorneys' fees and expenses up to the amount of 30% of the Maximum Settlement Distribution, or $32,294.33.  As the Settlement Agreement provides for dismissal of Plaintiff's FLSA claims without prejudice, the *Cheeks* assessment and approval need not apply.  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the Department of Labor to take effect.).  Putting aside the elements of a *Cheeks* analysis, the fee amount is fair and reasonable.  Attorneys' fees of approximately one-third of the total settlement amount are commonly awarded in wage-and-hour litigations.  *See, e.g.*, Order, *Han v. Sterling Nat'l Mortg.*, No. 09-CV-5589 (E.D.N.Y. Aug. 9, 2012), ECF No. 116 (approving thirty-six percent fees of total settlement to counsel); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for [one-third] of the fund is reasonable and 'consistent with the norms of class litigation in this circuit.'" (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008))); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082,

2010 WL 2945556, at *7 (S.D.N.Y. July 22, 2010) (approving one-third fees of total settlement to counsel).  As this case is ongoing and still involved Court approval, notice, distribution, and likely additional hearings before the Court, Plaintiff will be prepared to submit billing records at the close of litigation to justify its fees.

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court: (1) certify a provisional settlement class; (2) grant preliminary approval of the proposed class action settlement; (3) approve the notice to class members; (4) assign Named Plaintiff's counsel as Class Counsel; and (5) set a final approval hearing and briefing schedule.

Dated:  August 29, 2017

s/ Walker G. Harman, Jr
Walker G. Harman, Jr.
Owen H. Laird
The Harman Firm LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
Tel: (212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

*Attorneys for Plaintiff Kaisha Murphy*


s/ Jeffrey F. Webb
Jeffrey F. Webb
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
jeffrey.webb@ropesgray.com

*Attorney for Defendant HeartShare Human
Services of New York*